EXHIBIT B

COMPLAINT TO TRANS UNION, LLC

STATE OF MINNESOTA                          DISTRICT COURT
COUNTY OF HENNEPIN                   FOURTH JUDICIAL DISTRICT
                                        Case Type: Other Civil

| | |
|---|---|
| Wendy Stormo-Parsons, | Court File No.: |
| **Plaintiff,** | Judge: |
| v. | |
| Experian Information Solutions, Inc., Trans Union LLC, and TCF National Bank, | **COMPLAINT** |
| **Defendants.** | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.   The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a

vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Wendy Stormo-Parsons ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union" or "TU") and TCF National Bank ("TCF") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information and Defendants' failure to properly investigate Plaintiff's disputes.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in Minnesota.

7. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heir, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

9. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

### JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to general state jurisdiction.

11. Plaintiff is an individual residing in the County of Hennepin, State of Minnesota.

12. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendant Experian is a business entity doing business in the County of Hennepin, State of Minnesota.

14. Defendant Experian's registered agent address is: CT Corporation Systems Inc., 1010 Dale St. N., St. Paul, Minnesota 55117.

15. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

16. Defendant Trans Union is a business entity doing business in the County of Hennepin, State of Minnesota.

17. Defendant Trans Union's registered agent address is: Prentice-Hall Corp System Inc., 2345 Rice Street, Suite 230, Roseville, MN 55113.

18. Defendant Trans Union regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

19. Defendant TCF is an entity doing business in the County of Hennepin, State of Minnesota.

20. Defendant TCF's address for notice is: 1405 Xenium Lane North, Plymouth, MN 55441.

21. The creditor named herein, TCF, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

22. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs,

successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

23. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

24. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendant is liable to Plaintiff or the relief prayed for herein.

25. Venue lies with this Court pursuant to Minn. Stat. § 542.01 because that is where the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

26. On or about June 2005, Plaintiff incurred a debt with TCF, with an account number beginning in 9902, related to financial obligations on a mortgage (the "TCF Account 1").

27. On or about December 2006, Plaintiff incurred a debt with TCF, with an account number beginning in █████, related to financial obligations on a home equity loan (the "TCF Account 2").

28. On or about October 31, 2013, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Minnesota pursuant to

11 U.S.C. § 1301 *et seq.* Plaintiff's case was assigned Case Number 13-45355 (the "Bankruptcy").

29. Plaintiff's obligations to TCF were excluded from the Bankruptcy and Plaintiff continued to pay TCF directly.

30. Plaintiff performed her obligations to TCF on the TCF Account 1 and TCF Account 2 (collectively the "Accounts") in accord with the original contractual terms.

31. Plaintiff's bankruptcy was closed on February 7, 2019.

32. It is illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

33. However, Defendants either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

34. Additionally, Defendants' reporting of the Accounts was materially misleading.

35. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about what otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

*The Impact of Inaccurate or Misleading Information on Consumer Reports*

36. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.    credit or insurance to be used primarily for personal, family, or household purposes;

    ii.   employment purposes; or

    iii.  any other purpose authorized under section 1681b.

37. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

38. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

39. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### Credit Scoring

40. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

41. Defendants' departures from the credit industry's own reporting standards have caused Plaintiff to suffer from reduced FICO credit scores.

42. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

43. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

44. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

45. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

46. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

47. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

48. Here, incorrectly reporting Plaintiff's Accounts as included in bankruptcy and/or discharged in bankruptcy, with no balance—when the Accounts were in fact kept out of the Bankruptcy and were paid as agreed—adversely affects Plaintiff's FICO score, as it excludes any recent positive payment history associated with the Accounts and it alters the age/length of credit history, and it alters the mix of accounts/types.

49. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in

score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

50. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Experian and TCF's Inaccurate Reporting of the TCF Account 1 on the Experian Credit Report*

51. In Plaintiff's credit report from Experian dated sometime before August 8, 2019 (the "Experian Credit Report"), Experian and TCF failed to report accurate information regarding the TCF Account 1.

52. Due to the TCF Account 1 not being included in Plaintiff's Bankruptcy, Experian and TCF were required to report that the TCF Account 1 was current or paying as agreed on the Experian Credit Report.

53. Instead, Experian and TCF reported that the TCF Account 1's status was "discharged through Bankruptcy Chapter 13" on Plaintiff's Experian Credit Report.

54. Through the contractual terms between TCF and Plaintiff, as well as the TCF Account 1 being excluded from Plaintiff's Bankruptcy, the TCF Account 1

was open and not included in the Bankruptcy or otherwise discharged.

55. It was therefore inaccurate for Experian and TCF to report that the TCF Account 1 was discharged in bankruptcy on Plaintiff's Experian Credit Report.

### Experian and TCF's Inaccurate Reporting of the TCF Account 2 on the Experian Credit Report

56. In Plaintiff's Experian Credit Report, Experian and TCF failed to report accurate information regarding the TCF Account 2.

57. Due to the TCF Account 2 not being included in Plaintiff's Bankruptcy, Experian and TCF were required to report that the TCF Account 2 was current or paying as agreed on the Experian Credit Report.

58. Instead, Experian and TCF reported that the TCF Account 2's status was "discharged through Bankruptcy Chapter 13" on Plaintiff's Experian Credit Report.

59. Through the contractual terms between TCF and Plaintiff, as well as the TCF Account 2 being excluded from Plaintiff's Bankruptcy, the TCF Account 2 was open and not included in the Bankruptcy or otherwise discharged.

60. It was therefore inaccurate for Experian and TCF to report that the TCF Account 2 was discharged in bankruptcy on Plaintiff's Experian Credit Report.

### *TU and TCF's Inaccurate Reporting of the TCF Account 1 on the TU Credit Report*

61. In Plaintiff's credit report from TU dated sometime before August 8, 2019 (the "TU Credit Report"), TU and TCF failed to report accurate information regarding the TCF Account 1.

62. Due to the TCF Account 1 not being included in Plaintiff's Bankruptcy, TU and TCF were required to report that the TCF Account 1 was current or paying as agreed on the TU Credit Report.

63. Instead, TU and TCF reported that the TCF Account 1's pay status was "account included in bankruptcy" on Plaintiff's TU Credit Report.

64. Additionally, TU and TCF reported that the TCF Account 1 was closed on November 30, 2018.

65. Through the original payment plan between TCF and Plaintiff, as well as the TCF Account 1 being excluded from Plaintiff's Bankruptcy, the TCF Account 1 was open and not included in the Bankruptcy or otherwise discharged.

66. It was therefore inaccurate for TU and TCF to report that the TCF Account 1 was included in bankruptcy on Plaintiff's TU Credit Report.

### *TU and TCF's Inaccurate Reporting of the TCF Account 2 on the TU Credit Report*

67. In Plaintiff's TU Credit Report, TU and TCF failed to report accurate information regarding the TCF Account 2.

68. Due to the TCF Account 2 not being included in Plaintiff's Bankruptcy, TU and TCF were required to report that the TCF Account 2 was current or paying as agreed on the TU Credit Report.

69. Instead, TU and TCF reported that the TCF Account 2's pay status was "account included in bankruptcy" on Plaintiff's TU Credit Report.

70. Through the original payment plan between TCF and Plaintiff, as well as the TCF Account 2 being excluded from Plaintiff's Bankruptcy, the TCF Account 2 was open and not included in the Bankruptcy or otherwise discharged.

71. It was therefore inaccurate for TU and TCF to report that the TCF Account 2 was included in bankruptcy on Plaintiff's TU Credit Report.

### *Plaintiff's Dispute*

72. On or after August 8, 2019, Plaintiff disputed Experian's reporting regarding the Accounts pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

73. On or after August 8, 2019, Plaintiff disputed TU's reporting regarding the Accounts pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect and inaccurate credit information.

74. Specifically, Plaintiff sent a letter to Experian requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected as to the Accounts.

75. Specifically, Plaintiff sent a letter to TU requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected as to the Accounts.

76. Experian was required to conduct an investigation into the Accounts on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

77. TU was required to conduct an investigation into the Accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

78. Experian was required to send notice of Plaintiff's dispute to TCF, pursuant to 15 U.S.C. § 1681i(a)(2).

79. TU was required to send notice of Plaintiff's dispute to TCF, pursuant to 15 U.S.C. § 1681i(a)(2).

80. Upon information and belief, Experian notified TCF of Plaintiff's dispute.

81. Upon information and belief, TU notified TCF of Plaintiff's dispute.

82. Upon information and belief, TCF received notice of Plaintiff's dispute as to the reporting of the Accounts on the Experian Credit Report.

83. Upon information and belief, TCF received notice of Plaintiff's dispute as to the reporting of the Accounts on the TU Credit Report.

84. A reasonable investigation by Experian would have indicated that it was reporting the Accounts inaccurately on the Experian Credit Report.

85. A reasonable investigation by TU would have indicated that it was reporting the Accounts inaccurately on the TU Credit Report.

86. A reasonable investigation by TCF would have indicated that it was reporting the Accounts inaccurately on Plaintiff's Experian Credit Report.

87. A reasonable investigation by TCF would have indicated that it was reporting the Accounts inaccurately on Plaintiff's TU Credit Report.

88. TCF failed to conduct a reasonable investigation despite receiving regular monthly payments from Plaintiff on the Accounts and receiving notice of the inaccurate information on Plaintiff's Experian Credit Report from Plaintiff's dispute letter to Experian.

89. TCF failed to conduct a reasonable investigation despite receiving regular monthly payments from Plaintiff on the Accounts and receiving notice of the inaccurate information on Plaintiff's TU Credit Report from Plaintiff's dispute letter to TU.

90. Instead, TCF re-reported the Accounts inaccurately to Experian.

91. Instead, TCF re-reported the Accounts inaccurately to TU.

92. Experian re-reported the Accounts inaccurately as well.

93. TU re-reported the Accounts inaccurately as well.

***Experian and TCF's Continued Inaccurate Reporting of the TCF Account 1 on the Experian Report***

94. On Experian dispute results dated September 13, 2019 ("Experian Dispute Results"), Experian and TCF failed to accurately report the TCF Account 1 as current or paying as agreed.

95. Instead, on the Experian Dispute Results, Experian and TCF inaccurately reported that TCF Account 1's status was "discharged through Bankruptcy Chapter 13".

96. Experian and TCF's reporting was inaccurate because the TCF Account 1 was not included in the Bankruptcy or discharged, but was excluded from Plaintiff's Bankruptcy altogether.

97. TCF's failures were egregious in that TCF received notice of the inaccurate reporting on the Experian Credit Report and had received regular monthly payments from Plaintiff toward the TCF Account 1, yet TCF affirmed the inaccurate reporting of the TCF Account 1 to Experian and caused the TCF Account 1 to continue to report inaccurately.

98. Experian's failures were particularly noteworthy in that Experian received notice of the inaccurate reporting on the Experian Credit Report and had access to Plaintiff's publicly accessible Bankruptcy documents, yet Experian continued to report the TCF Account 1 inaccurately.

***Experian and TCF's Continued Inaccurate Reporting of the TCF Account 2 on the Experian Report***

99. On Experian Dispute Results, Experian and TCF failed to accurately report the TCF Account 2 as current or paying as agreed.

100. Instead, on the Experian Dispute Results, Experian and TCF inaccurately reported that TCF Account 2's status was "discharged through Bankruptcy Chapter 13".

101. Experian and TCF's reporting was inaccurate because the TCF Account 2 was not included in the Bankruptcy or discharged, but was excluded from Plaintiff's Bankruptcy altogether.

102. TCF's failures were egregious in that TCF received notice of the inaccurate reporting on the Experian Credit Report and had received regular monthly payments from Plaintiff toward the TCF Account 2, yet TCF affirmed the inaccurate reporting of the TCF Account 2 to Experian and caused the TCF Account 2 to continue to report inaccurately.

103. Experian's failures were particularly noteworthy in that Experian received notice of the inaccurate reporting on the Experian Credit Report and had access to Plaintiff's publicly accessible Bankruptcy documents, yet Experian continued to report the TCF Account 2 inaccurately.

***TU and TCF's Continued Inaccurate Reporting of the TCF Account 1 on the TU Report***

104. On TU investigation results dated September 13, 2019 ("TU Investigation Results"), TU and TCF failed to accurately report the TCF Account 1 as current or paying as agreed.

105. Instead, on the TU Investigation Results, TU and TCF inaccurately reported that TCF Account 1's pay status was "Account Included in Bankruptcy".

106. TU and TCF also inaccurately reported the TCF Account 1 was closed on November 30, 2018.

107. TU and TCF also reported the remark "Chapter 13 Bankruptcy" on the TCF Account 1 on Plaintiff's TU Investigation Results.

108. TU and TCF's reporting was inaccurate because the TCF Account 1 was not included in the Bankruptcy or discharged, but was excluded from Plaintiff's Bankruptcy altogether.

109. TCF's failures were egregious in that TCF received notice of the inaccurate reporting on the TU Credit Report and had received regular monthly payments from Plaintiff toward the TCF Account 1, yet TCF affirmed the inaccurate reporting of the TCF Account 1 to TU and caused the TCF Account 1 to continue to report inaccurately.

110. TU's failures were particularly noteworthy in that TU received notice of the inaccurate reporting on the TU Credit Report and had access to Plaintiff's publicly accessible Bankruptcy documents, yet TU continued to report the TCF Account 1 inaccurately.

### *TU and TCF's Continued Inaccurate Reporting of the TCF Account 2 on the TU Report*

111. On Investigation Results, TU and TCF failed to accurately report the TCF Account 2 as current or paying as agreed.

112. Instead, on the TU Investigation Results, TU and TCF inaccurately reported that TCF Account 2's pay status was "Account Included in Bankruptcy".

113. TU and TCF also reported the remark "Chapter 13 Bankruptcy" on the TCF Account 2 on Plaintiff's TU Investigation Results.

114. TU and TCF's reporting was inaccurate because the TCF Account 2 was not included in the Bankruptcy or discharged, but was excluded from Plaintiff's Bankruptcy altogether.

115. TCF's failures were egregious in that TCF received notice of the inaccurate reporting on the TU Credit Report and had received regular monthly payments from Plaintiff toward the TCF Account 2, yet TCF affirmed the inaccurate reporting of the TCF Account 2 to TU and caused the TCF Account 2 to continue to report inaccurately.

116. TU's failures were particularly noteworthy in that TU received notice of the inaccurate reporting on the TU Credit Report and had access to Plaintiff's publicly accessible Bankruptcy documents, yet TU continued to report the TCF Account 2 inaccurately.

---

*Defendants' Failures and Plaintiff's Damages*

117. Reporting an account was "included in bankruptcy" has no meaningful different from reporting that an account was "discharged in bankruptcy"— that is, the phrases viewed as having the same meaning. *See Diaz v. Trans Union, LLC*, No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549, at *7 (E.D. Cal. June 5, 2019) ("Indeed, many courts considering this very issue have concluded that "[t]here is no meaningful difference between the phrase 'included in bankruptcy' and the phrase 'discharged in bankruptcy.'") (citing *Butler v. Equifax Info. Servs., LLC, No.* 5:18-cv-02084-JGB-SHK (C.D. Cal. Apr. 3, 2019); *Smith v. Trans Union, LLC*, No. 2:18-cv-13098-GCS-SDD (E.D. Mich. May 10, 2019); *Fleming v. Trans Union, LLC*, No. 2:18-cv-9785-PA-PLA (C.D. Cal. March 8, 2019).

118. It is inaccurate to report an account was included in bankruptcy when the account was excluded from bankruptcy and not included in bankruptcy or discharged in bankruptcy.

119. Reporting that an account was included in bankruptcy when the account was actually excluded from bankruptcy altogether is detrimental to a consumer's credit reputation.

120. As evidenced by Experian and TU's failure to correct the reporting of Plaintiff's Accounts despite receiving knowledge of the active status of the Accounts, and having access to search Plaintiff's publicly available bankruptcy

information, Experian and TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

121. As evidenced by the inaccurate re-reporting after Plaintiff sent Defendants a detailed dispute identifying the inaccurate information related to Plaintiff's Accounts, Defendants, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

122. Defendants failed to review all relevant information provided by Plaintiff in the dispute to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

123. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/ or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

124. Defendants' continued inaccurate and negative reporting of the Accounts in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

125. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

126. Based upon Defendant's knowledge of the active status of the Accounts and TCF's continued acceptance of Plaintiff's payments during the Bankruptcy and after, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

127. Defendants' continued inaccurate and negative reporting has caused Plaintiff to suffer actual damages, including, without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and emotional distress.

128. By inaccurately reporting account information, Defendants' acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

129. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

130. Defendants' actions and omissions have caused Plaintiff's credit report to falsely indicate that the Accounts were discharged in bankruptcy, thereby denying Plaintiff the positive effect of the reporting of her payments on the Accounts over the course of her Bankruptcy and after.

131. Creating the false impression of the Accounts being discharged in Bankruptcy creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's Experian and/or TU credit reports that is engaged in judgment-based lending.

132. By inaccurately reporting account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
### THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681 *ET SEQ.* (FCRA)

133. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

134. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

135. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and

---

reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

136. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

## REQUEST FOR JURY TRIAL

137. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against each Defendant;

4. Punitive damages against each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorneys' fees against each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6. Any other relief the Court may deem just and proper.

KAZEROUNI LAW GROUP

Date: November 18, 2020

By: /s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
**KAZEROUNI LAW GROUP**
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone:  (952) 225-5333
Facsimile:  (800) 635-6425
Email: tony@kazlg.com

*Attorneys for Wendy Stormo-Parsons*

# ACKNOWLEDGEMENT

The undersigned acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

KAZEROUNI LAW GROUP

Date: November 18, 2020

By:/s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
KAZEROUNI LAW GROUP
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone:   (952) 225-5333
Facsimile:   (800) 635-6425
Email: tony@kazlg.com

*Attorneys for Wendy Stormo-Parsons*